UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JERMAINE LITTLE, | : | |
|     Petitioner, | : | |
| | : | |
| v. | : | NO.  3:05cv1674 (MRK) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Respondent. | : | |

**RULING AND ORDER**

Pending before the Court is *pro se* Petitioner Jermaine Little's Motion to Vacate, Set Aside, or Correct Sentence [doc. # 1] pursuant to 28 U.S.C. § 2255.  In connection with his Section 2255 motion, Mr. Little has sent the Court a letter, dated June 26, 2006, in which he requests appointed counsel to help him pursue his request for sentence modification.  **The Clerk is directed to docket Mr. Little's letter, attached to this Order, as a Motion to Appoint Counsel**.

For the reasons explained below, the Court DENIES Mr. Little's  Motion to Vacate, Set Aside, or Correct Sentence [doc. # 1], and DENIES AS MOOT his Motion to Appoint Counsel.

**I.**

On November 29, 2004, Mr. Little pled guilty to being a felon in possession of a firearm, and was later sentenced to 188 months in prison and 3 years of supervised release on that conviction. *See USA v. Little*, 4-CR-217 (MRK) [docs. ## 23, 24, 36].  The federal term of incarceration was imposed so as to run concurrently with an 8-year term of imprisonment on state charges which Mr. Little is already serving in a Connecticut facility.

On October 28, 2005, Mr. Little filed the petition currently before the Court, in which he alleges that he received ineffective assistance of counsel in making the decision to plead guilty.  In particular, Mr. Little complains that his attorney told him that if he did not plead guilty he would get

life in prison, and also falsely promised him that if he did plead guilty his state sentence would be modified so that he could serve his concurrent state and federal sentences in a federal facility. *See* Motion to Vacate, Correct, or Set Aside Sentence [doc. # 1] at 6; Response to Memorandum in Opposition [doc. # 6] at 1-2. In a later submission to the Court, though not in his petition itself, Mr. Little appears to make the additional argument that his guilty plea was not made knowingly and voluntarily because he "wasn't in [his] right frame of mind due to being in a mental health facility on mental health medication due to a couple of suicide attempts," Response to Memorandum in Opposition [doc. # 6].

Section 2255 requires a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In cases where the petition rests on allegations of ineffective assistance of counsel and the claims are "not so clearly bereft of merit as to be subject to dismissal on [their] face," the Second Circuit has held that a district court need not immediately choose between summary dismissal and a full-blown hearing, but may instead gather additional information by "supplement[ing the record] by a detailed affidavit from trial counsel." *Chang v. United States*, 250 F.3d 79, 84 (2d Cir. 2001). Appointment of counsel is only required once the Court has determined that an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings* 8(c).

In accordance with the *Chang* framework, the Court ordered both sides to show cause why the petition should be granted or denied, and then ordered Mr. Little and his former counsel, Assistant Federal Defender Deirdre Murray, to submit detailed affidavits directed to Mr. Little's claims. *See* Orders [docs. ## 5, 9, 16]. Mr. Little filed his affidavit on April 12, 2006 [doc. # 19], and Ms. Murray filed hers on May 15, 2006 [doc. # 20]. In addition, the Government filed a Second

2

Supplemental Response to the Motion to Vacate, Correct or Set Aside Sentence [doc. # 21]. Having reviewed the parties' briefs and the affidavits of Mr. Little and his former counsel, the Court concludes that Mr. Little's allegations of ineffective assistance and involuntary pleading are unfounded, that an evidentiary hearing is not warranted, and that his petition must therefore be denied. Because the Court has concluded that an evidentiary hearing is not warranted, there is no need for Mr. Little to be appointed counsel in this matter, and his request for counsel is therefore denied.

## II.

Upon review of the parties' submissions and the Court's records, the following appear to be the parties' understandings of the facts that bear on Mr. Little's claim that his guilty plea was not made knowingly and voluntarily due to ineffective assistance of counsel and mental health difficulties. Preliminarily, the Court notes that Ms. Murray and Mr. Little largely agree on the number and content of their meetings, but differ in their interpretation of certain of their exchanges.

On September 16, 2004, shortly after being assigned to Mr. Little's case, Assistant Public Defender Murray visited Mr. Little in jail. He told her that he wanted to go to trial and gave her the names and numbers of some individuals whom he wanted her to talk to about his case. About two weeks later, Ms. Murray visited Mr. Little again and they had a long conversation about his trial and how the proceedings would unfold in a federal court.

At the beginning of October 2004, Ms. Murray visited Mr. Little along with another lawyer who was representing Mr. Little in his then-pending state court proceedings (his "state lawyer"). Mr. Little and Ms. Murray have differing recollections of exactly who said what at that meeting, but they agree that at some point the possibility of asking the state prosecutor to modify Mr. Little's

3

undischarged state sentence so that he could be transferred to federal custody was discussed. It is apparent from his filings that Mr. Little interpreted this discussion as a promise by Ms. Murray that he would be transferred to federal custody if he pled guilty to the federal charges. *See* Response to Memorandum in Opposition [doc. # 6] at 1-2 ("I was told that if I signed the plea agreement I'd be going into federal custody."). However, Ms. Murray denies that any promises were, or could have been, made – on her account, the lawyers were merely offering to determine whether state authorities, with whom the ultimate decision resided, would be willing to make such an accommodation.

In October 2004, Ms. Murray sought a continuance of Mr. Little's trial date to accommodate ongoing plea negotiations with the United States Attorney's Office and her need to attend a training seminar in New Mexico in early November. Mr. Little's trial was rescheduled for jury selection in early December 2004. At the end of October 2004, Ms. Murray visited Mr. Little again, this time in the company of an investigator, who recounted to Mr. Little what various witnesses in his case had said. Ms. Murray admits that, after discussing the advantages and disadvantages of proceeding to trial, she gave Mr. Little her professional opinion that pleading guilty was his best option and advised him that the plea deal he had been offered by the Government was particularly favorable because it was founded upon an assurance of a specific sentence under Rule 11(c)(1)(C) of the *Federal Rules of Criminal Procedure*, thus reducing the uncertainty about possible sentences. Shortly after this conversation, Mr. Little called Ms. Murray and told her that he wanted to go to trial; he later followed up his call with a letter explaining the reasons for his decision. Mr. Little was unable to reach Ms. Murray for about two weeks after making his decision, but in mid-November Ms. Murray and Mr. Little had another conversation in which Mr. Little says that Ms. Murray

4

advised Mr. Little against going to trial, on the grounds that it carried the risk of a longer sentence and he would be unlikely to stand trial in front of a jury with a significant number of African-Americans or individuals who would understand Mr. Little's impoverished background.

At some point in November Ms. Murray told Mr. Little that she had spoken to his grandmother, who wanted Mr. Little to take the plea deal so that she would still be alive to see him when he got out of jail. Mr. Little also recalls being evaluated by a defense psychologist. Then, on November 29, 2004, Mr. Little appeared in court again and entered a plea of guilty. Although in a previous unsworn filing [doc. # 10] Mr Little had alleged that Ms. Murray encouraged him to answer the Court's questions falsely so as to avoid losing his plea deal and getting life in prison, he made no such accusation in his sworn affidavit [doc. # 19].

At the plea colloquy, the Court engaged Mr. Little in the following exchange of questions and answers:

> THE COURT: Are you presently or have you recently been under the care of a physician or psychiatrist?
> THE DEFENDANT: No.
> THE COURT: Have you ever received any treatment for mental illness or emotional disturbance?
> THE DEFENDANT: No.
> THE COURT: Have you been addicted to alcohol or narcotic drugs?
> THE DEFENDANT: Yeah.
> THE COURT: Are you still addicted to those, sir?
> THE DEFENDANT: No.
> THE COURT: And have you taken, in the last 48 hours, any alcohol, drugs or medication that could affect your ability to understand the questions that I'm asking you today?
> THE DEFENDANT: No.
> THE COURT: Is your mind clear?
> THE DEFENDANT: Very.
> THE COURT: Do you feel that you understand fully what's taking place here today?
> THE DEFENDANT: Yeah.

. . .

THE COURT: Have you had an opportunity to discuss the charges with your attorney, Ms. Murray?
THE DEFENDANT: Yes.
THE COURT: Are you satisfied with her representation of you to date?
THE DEFENDANT: Yes.

. . .

THE COURT: Bottom of page 6, you are acknowledging your guilt and you are acknowledging that your guilty plea is free and voluntary. Do you understand that, sir?
THE DEFENDANT: Yes

. . .

THE COURT: Finally, you are acknowledging that there are no other promises, agreements or conditions which have been entered into other than those set forth in this plea agreement and none will be entered into unless set forth in writing by all the parties. Do you understand that?
THE DEFENDANT: Yes

. . .

THE COURT: Is there anything that I've said about your agreement with the government that's different than what you had in mind as what you have agreed to with the government?
THE DEFENDANT: No, it isn't.
THE COURT: Other than the promises that are set forth in this written plea agreement that I've just reviewed with you, has anyone made any other promises that have caused you to want to plead guilty?
(Defendant conferring with Ms. Murray.)
THE DEFENDANT: No.
THE COURT: Has anyone made any threats against you in an attempt to get you to plead guilty?
THE DEFENDANT: No.
THE COURT: Is anyone forcing you or intimidating you in any way to plead guilty, sir?
THE DEFENDANT: No.
THE COURT: Are you pleading guilty here today voluntarily and of your own free will because you are guilty?
THE DEFENDANT: Yes.

> ...
>
> THE COURT: Mr. Little, based on everything I've seen and heard here today, it appears to me that you want to plead guilty because you are guilty and you choose to plead guilty freely and voluntarily, is that your position, sir?
> THE DEFENDANT: Yeah.

About a month after entering his guilty plea, on December 16, 2004, Mr. Little attempted suicide and was placed in a mental health unit at Garner Correctional Facility. After Mr. Little's relocation to Garner, he told Ms. Murray that he wanted to withdraw his plea. Ms. Murray advised him that, at this point in time, ineffective assistance of counsel was probably the only ground upon which he could move to reopen his plea, and that such a claim would require her to withdraw from continuing to represent him in the case. Mr. Little appears to have interpreted Ms. Murray's comment about withdrawing from the case as a threat designed to coerce him into not changing his mind about the plea. *See* Little Affidavit [doc. # 19] at 4 ("While at [Garner] . . . I told her I'm having second thoughts about taking [the] plea. She told me if I don't take the plea she's gonna take herself off my case").[1]

In early and mid-February 2005, Mr. Little and Ms. Murray talked again about his prospects for obtaining a transfer to federal custody, and Mr. Little appears once again to have understood Ms. Murray to have promised that such a transfer would occur. For her part, Ms. Murray asserts that she provided no such guarantee, and simply told Mr. Little that she was hopeful that such an arrangement could be made, but that the final decision would be for a state court judge to make.

---

[1] Mr. Little's recollection that Ms. Murray told him in December, while at Garner, that he should "take the plea" is puzzling because Mr. Little had already entered his guilty plea on November 29. It appears to the Court that what Mr. Little is trying to say is that Ms. Murray told him that she would withdraw from his case if he tried to *withdraw* his plea, a point which Ms. Murray does not dispute.

7

On March 10, 2005, Mr. Little appeared in Court for his sentencing. During the sentencing colloquy, the Court asked Mr. Little once again whether he was satisfied with Ms. Murray's legal representation of him and whether he was prepared to proceed with sentencing. Mr. Little responded affirmatively to both questions. The Court then sentenced Mr. Little to 188 months to run concurrently with his state sentence, the sentence on which his guilty plea under Rule 11(c)(1)(C) was based. Shortly after his sentencing, Mr. Little received his time-sheet from prison authorities, and he realized that his federal sentence was not controlling the location in which he was to serve his time. Mr. Little asserts that at this point he "tried to call Ms. Murray to tell her that I have 10 days to take my plea back, . . . but she wasn't in . . . ." Little Affidavit [doc. # 19] at 5. But Mr. Little appears to have confused his sentencing with his plea, because the plea occurred on November 29, 2004, long before his sentencing.

At the end of March 2005, Mr. Little spoke with Ms. Murray and his state lawyer and formed the impression that they had spoken with the state prosecutor and been told that he was willing to get Mr. Little into federal custody. Ms. Murray says that she understood that Mr. Little's state lawyer would pursue a modification of the state sentence necessary to make the transfer to federal custody possible. Some time later, Ms. Murray spoke with Mr. Little and learned that he was going to be transferred back to the Northern Correctional facility and that he was very distressed by this prospect. She called the Captain at Garner to see if Mr. Little's reassignment could be prevented but she was told that nothing could be done. At the end of April 2005, Ms. Murray and Mr. Little spoke again, and Ms. Murray realized that Mr. Little's state lawyer had not filed the pleadings necessary to modify the state sentence so that Mr. Little could serve his time in a federal facility. She called the state prosecutor, who told her that he did not object to Mr. Little's transfer to federal custody. Ms. Murray

therefore began to draft the request to the state court for a sentence modification, but was prevented from finishing and submitting the request by Mr. Little's present motion, which contained allegations of ineffective assistance that required Ms. Murray to withdraw her appearance on his behalf. Unable to complete the necessary paperwork on Mr. Little's behalf, Ms. Murray instead sent Mr. Little a copy of the relevant state court form, and a letter informing Mr. Little that she would have to withdraw from his case in light of his motion to vacate.

### III.

To obtain collateral relief under 28 U.S.C. § 2255, a petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States," 28 U.S.C. § 2255, and that the legal error had a "substantial and injurious effect" – that is, it resulted in "actual prejudice" to the petitioner. *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993); *see also Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht* to a petition under Section 2255). Mr. Little advances two grounds for relief: first, that his plea was made without effective legal representation; and second, that his plea was entered while he was under the influence of medication for mental health problems. The Court will deal with each of Mr. Little's arguments in turn.

*A.     Ineffective Assistance of Counsel*

Where, as here, a petitioner claims to have received ineffective assistance of counsel in deciding to plead guilty, he must show that "counsel's representation fell below an objective standard of reasonableness," and "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *United States v. Couto*, 311 F.3d 179, 187 (2d Cir. 2002) (internal quotation marks and citations omitted). Because of society's strong interest in the finality of judicial judgments, a person seeking collateral relief on

the grounds of ineffective assistance of counsel bears a heavy burden. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* 466 U.S. 668, 689 (1984).

The presumption in favor of counsel's effectiveness is especially strong in the context of guilty pleas where the petitioner has openly admitted his guilt before the court. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In this context, the Second Circuit has held that the Code of Professional Responsibility merely requires "[a] defense lawyer in a criminal case . . . to advise his client fully on whether a particular plea to a charge appears to be desirable." *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996) (quoting Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992)) (emphasis deleted). "[C]ounsel must communicate to the defendant the terms of the plea offer and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (citations omitted).

Nothing in Mr. Little's filings indicates that Ms. Murray failed to inform him of the terms of the plea, the advantages and disadvantages of taking the offered deal, or the penalties that he was facing. Mr. Little's filings do indicate that he felt pressured to plead guilty by the choice between the fifteen-year deal that he was being offered by the Government and the life sentence to which he would otherwise be exposed, but the difficulty of his situation was in no way of Ms. Murray's making. Indeed, it was her professional responsibility to make Mr. Little aware of that choice and to offer her professional opinion as to the merits and demerits of pleading or going to trial.

Mr. Little's primary theory of how Ms. Murray's performance rendered his guilty plea involuntary is that Ms. Murray coerced him into pleading guilty by promising him a transfer to

federal custody. However, Mr. Little's claim of coercion is defeated by his own sworn statements before the Court. At his plea colloquy, Mr. Little was repeatedly asked under oath whether his plea was free and voluntary, and on each occasion he answered in the affirmative. After reviewing the details of the plea agreement with Mr. Little, the Court also expressly asked Mr. Little whether it accurately reflected his understanding of his agreement with the Government, and he indicated that it did. Mr. Little was also asked point blank whether anyone had made any additional promises to him, or threatened him, or in any way forced or intimidated him into pleading guilty, and responded to each inquiry in the negative. Generally, "statements at plea allocution are conclusive absent credible reason 'justifying departure from their apparent truth,'" *U.S. v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992) (quoting *United States v. Bambulas*, 571 F.2d 525, 526 (10th Cir.1978)). Mr. Little was also asked whether he was satisfied with Ms. Murray's legal representation, and answered that he was. Although, as discussed below, Mr. Little alleges that the statements he made to the Court at *sentencing* may have been unreliable due to medication for a mental health problem, there is nothing in the record to indicate that Mr. Little's statements at the plea colloquy were anything other than truthful and accurate. In view of his own sworn statements at plea colloquy, the Court cannot accept Mr. Little's current contentions that his decision to plead guilty was coerced by a false promise of transfer from state custody by his federal defense counsel.

      Mr. Little's filings also indicate that at various times he felt frustrated by his inability to reach Ms. Murray for periods from a few days to more than a week. Mr. Little does not assert that these brief periods of delay in contacting his attorney in any way influenced his decision to plead guilty, or left him without counsel on that issue. But even if such a claim is implicit in his filings, the Court rejects it. Since Mr. Little was not Ms. Murray's only client, a delay of a couple of days in no way

impugns Ms. Murray's professional competence. With respect to the ten-day period of unavailability that Mr. Little complains of between November 5 and November 15, 2004, Mr. Little appears to have forgotten that Ms. Murray sent him a letter dated October 18, 2004, explaining that she would be out of town for the second week of November, *see* Murray Affidavit [doc. # 20], Ex. A. Finally, Ms. Murray and Mr. Little disagree about whether Mr. Little attempted to contact Ms. Murray in late April 2005, and whether Ms. Murray failed to contact him until late May of that year, but the Court need not resolve this dispute because it is irrelevant to Mr. Little's claim of ineffective assistance of counsel with respect to his guilty plea, which was entered in November 2004.

In short, the Court can see nothing in the record to indicate that Ms. Murray's counsel to Mr. Little with respect to his guilty plea was anything other than competent and professional, and certainly nothing that could overcome the strong presumption of reliability that attaches in the context of an ineffective assistance challenge to a guilty plea. Mr. Little's own sworn statements at plea colloquy, presumed reliable and not undermined by anything in Mr. Little's current submissions, represented both that he was satisfied with his defense counsel, and that his plea was free and voluntary. Accordingly, the Court rejects Mr. Little's claim that his guilty plea was rendered involuntary by ineffective assistance of counsel.

B.   *Mental Health*

Although not asserted in his Motion to Vacate, Correct or Set Aside Sentence [doc. # 1] itself, Mr. Little's supplemental filings could be read to assert that his plea should be vacated because it was rendered unknowing and involuntary by the fact that he was suffering from depression and being medicated for it. *See* Response to Memorandum in Opposition [doc. # 6] (attorney mislead him and "used the fact that [he] wasn't in [his] right frame of mind due to being in a mental health

facility on mental health medication due to a couple of suicide attempts."). To the extent that Mr. Little intends to assert such a claim, it fails. First, both Mr. Little's affidavit and the medical records he submitted indicate that he succumbed to depression and was therefore on medication at the time of *sentencing*, but not at the time of his plea. Second, as rehearsed in the Court's findings of fact above, during the plea colloquy Mr. Little was asked a series of standard questions designed to ensure that a defendant is competent to plead, and his sworn responses directly refute any suggestion that he was being treated or medicated for mental illness at the time that he entered his guilty plea. As explained above, "statements at plea allocution are conclusive absent credible reason 'justifying departure from their apparent truth,'" *Gonzalez*, 970 F.2d at 1101. No such reason has been advanced, or suggests itself, in this case. Accordingly, the Court rejects Mr. Little's claim that his guilty plea was infected with error due to a mental health condition.

## IV.

For the reasons stated above, the Court concludes that Mr. Little has not shown that his sentence was imposed in violation of the Constitution or laws of the United States by virtue of a flawed guilty plea. Mr. Little was effectively represented by counsel through his guilty plea, which he entered knowingly and voluntarily.

It appears to the Court that what is really driving Mr. Little's motion is frustration and disappointment at the fact that he remains in state custody where he had hoped to be transferred to federal custody. Although Ms. Murray hoped and expected that arrangements would be made by Mr. Little's state lawyer to obtain the approvals needed to enable his transfer to federal custody before the expiration of his state sentence, no such arrangement has yet been achieved. Mr. Little's transfer from state to federal custody requires filing a submission with the state court, a submission that his

state lawyer failed to make, and that Ms. Murray was therefore engaged in formulating when Mr. Little's current motion unfortunately required her to withdraw from his case.  Ms. Murray has stated that she sent Mr. Little the appropriate form to complete.  To the extent that Mr. Little continues to hope for a transfer from state to federal custody, he must ask his state lawyer to complete the necessary paperwork, or complete it himself, and address his request to the state authorities who have the power to grant it.

     Mr. Little's Motion to Vacate, Set Aside, or Correct Sentence [doc. # 1] is DENIED.  The Clerk is directed to docket the attached letter, dated June 26, 2006, as a Motion for Appointment of Counsel, which is also DENIED.  The Clerk is further directed to close this file.

                                    IT IS SO ORDERED.

                                /s/      Mark R. Kravitz
                                        United States District Judge

**Dated at New Haven, Connecticut: <u>August 15, 2006</u>**.